UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|                Plaintiff, | ) Case No. <br> ) <br> ) Judge |
| vs. | ) |
| FUNDS IN THE AMOUNT OF $113,957 IN UNITED STATES CURRENCY, | ) <br> ) <br> ) |
|                Defendant, *In Rem*. | ) |

### VERIFIED COMPLAINT FOR FORFEITURE, *IN REM*

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem*.

Plaintiff hereby alleges as follows:

Nature of the Action

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), because it: (i) was furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) is the proceeds from the sale of a controlled substance; and/or (iii) was used or intended to be used to facilitate an illegal drug transaction in violation of 21 U.S.C. § 841, *et seq*.

4. Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5. This complaint is verified by the attached Verification of Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") Special Agent Daniel Schutz, which is fully incorporated herein.

The Defendant *In Rem*

6. The Defendant *in rem* consists of the following property:

- $113,957 (one hundred thirteen thousand nine hundred fifty-seven dollars) in United States currency. (Hereinafter, the "subject property").

7. The subject property was seized on August 5, 2020, by DHS-HSI Special Agent Schutz at Midway International Airport in Chicago, Illinois.

8. The subject property is currently in the custody of the Department of Homeland Security, Fines, Penalties, and Forfeitures Unit.

## Jurisdictional Statement

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

## Basis for Forfeiture

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

13. The subject property is further subject to forfeiture because there is a substantial connection between the subject property and a criminal offense, namely a violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*.

## Summary of Facts

14. On August 10, 2020, a search warrant was executed by agents of DHS-HSI on luggage examined at Midway Airport, which led to the discovery and seizure of the subject property from Debbie Davis ("Davis"), who had traveled from Chicago, Illinois to Los Angeles, California on Southwest Airlines flight 1893.

15. Based upon the experience of law enforcement, including Special Agent Schutz, and the totality of the circumstances further described below, the subject property was seized for forfeiture.

## Facts

I. Midway Airport Interdiction

    A. Overview of Interdiction

16. This Complaint describes an investigation conducted by members of DHS-HSI at Midway Airport, to which Special Agent Schutz is a member.

17. Based upon the experience of investigators in this case and in similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand locations for illicit drugs.

18. States such as Arizona and California are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

19. Person(s) involved in the illegal drug trade often hire couriers to transport drugs and/or proceeds from the sale of drugs by utilizing commercial airlines and shipping companies.

20. In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious flight itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

21. Factors that constitute suspicious flight itineraries include airfare purchase at the counter immediately prior to departure or short notice reservations for one-way travel, sometimes paid in cash.

22. In addition, investigators know it is common for couriers to utilize a third-party credit card to purchase airfare and to provide inaccurate or not in-service telephone numbers to airline and other transit companies.

23. Couriers travel with minimal or no luggage and often attempt to board at the last possible moment.

24. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airline and passenger railroad services.

B. Discovery of Subject Property

25. On August 5, 2020 at approximately 0930 hours, the Transportation Security Administration ("TSA") contacted the HSI Resident Agent in Charge regarding the discovery of a large amount of United States currency found in a checked black suitcase at Midway Airport.

26. TSA reported that, subsequent to a routine x-ray examination of the checked black suitcase that indicated an aberration, an inspection revealed a large amount of United States currency wrapped in rubber bands within the checked black suitcase. TSA photographed the currency, closed the checked black suitcase, and held the suitcase pending investigation by HSI.

27. The checked black suitcase contained a luggage tag indicating it belonged to Debbie Davis, destined for Los Angeles International Airport aboard Southwest flight number 1893.

28. TSA reported to HSI investigators that Davis had boarded the flight to Los Angeles and that the checked black suitcase remained at Midway Airport.

29. Investigators know Los Angeles, California, and the central California region in particular, to be a known source area for illegal drug trafficking.

30. Further, investigators know that those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep the drugs or proceeds on their person or within accompanying bags or suitcases.

31. . At the request of DHS-HSI Special Agent Oleg Sokolov, at approximately 1045 hours, Des Plaines Police Officer Alfonso Galvan and his canine partner Jager arrived at Midway Airport.

    C. Canine Examination of Subject Property

32. Officer Galvan utilized his certified narcotics detection canine, Jager, to examine the subject suitcase.

33. Officer Galvan and Jager have been in service since December 2017.

34. Jager was last certified prior to this investigation by the Illinois Law Enforcement Training and Standards Board on June 24, 2020.

35. Jager is trained and certified to detect the odors of heroin, cocaine, marijuana, hash, methamphetamine, ecstasy, and other controlled substances.

36. Through maintenance training, Jager does not alert to clean or uncirculated United States currency.

37. If at any time during a search Jager smells one of the odors he is trained to detect, Jager will alert at the area where he smells the odor.

38. Officer Galvan conducted a scent investigation in the TSA security area at Midway Airport. As a result of the scent investigation, Jager gave a positive alert to Davis's suitcase. Jager did not alert to any of the other items or suitcases in the TSA security area.

39. After the canine examination, law enforcement officers secured the suitcase in an evidence room.

D. Initial Interview of Davis and Daniels

40. At approximately 1028 hours, while the canine examination was requested and conducted in Chicago, Illinois, HSI Special Agent Eric Binstock contacted HSI Special Agent Bethany Vehlow at HSI Los Angeles regarding Davis's travel to Los Angeles.

41. Investigators in Los Angeles, California sought to conduct a consensual interview of Davis upon her arrival at Los Angeles International Airport.

42. In an attempt to assist in locating Davis, investigators utilized law enforcement databases to conduct record checks and obtained a driver's license photo of Davis from the Illinois Secretary of State.

43. On August 5, 2020, at approximately 1140 hours, HSI investigators arrived at Southwest Airlines baggage claim #2 at Los Angeles International Airport, which was the baggage claim area for the inbound Southwest Airlines flight 1893, in an attempt to interview Davis.

44. DHS-HSI Special Agent Vehlow and Task Force Officer Edna Moreno made contact with Davis at the Los Angeles International Airport and conducted a consensual encounter.

45. During the consensual interview, Davis stated the following:

    a) Davis stated that her suitcase contained approximately $89,000 in United States currency, purses, and clothes.

    b) Davis stated that the money was intended to purchase clothes from showrooms in Los Angeles, California, order to sell at her

8

      businesses located in Chicago, Illinois, known as "Deb's Closet" and "Englewood Furniture."

  c) Davis showed investigators a screen shot on her phone of the Illinois Business Authorization Certificate of Registration for "Debs Closet LLC" that showed an expiration date of November 1, 2020.

  d) Davis further showed investigators a screen shot on her phone of a query result for "Englewood Furniture Inc" on the Office of the Illinois Secretary of State website. The screen shot does not indicate the status of the corporation.

  e) Davis stated that she has run these businesses for approximately one or two years.

  f) Davis stated that she travels to Los Angeles, California every three weeks in order to gather merchandise for her businesses and that she has a house located in North Hollywood, California.

  g) Davis stated that she recently obtained a business loan.

  h) Davis stated the checked black suitcase contained approximately $89,000 in United States currency.

46. On August 5, 2020, Davis was traveling to Los Angeles, California with Corey Daniels.

47. DHS-HSI Special Agent Kevin Radisay and DHS-HSI Special Agent Juan Nieto conducted a consensual interview with Daniels.

9

48. During the consensual interview, Daniels stated the following:

   a) Daniels stated that he has been dating Davis for approximately ten years.

   b) Daniels estimated the checked black suitcase contained approximately $13,000 in United States currency.

   c) Daniels stated that he and Davis travel to Los Angeles, California in order to purchase counterfeit items to sell at Davis's business.

   d) Daniels estimated that he and Davis had previously purchased $12,000 in counterfeit items and sold these items during the weekend of August 1, 2020.

   e) Daniels stated that the grand opening of "Deb's Closet" was during the week of July 27, 2020.

   f) Daniels stated that they were considering moving to North Hollywood, California.

49. After the consensual encounters, Davis and Daniels continued with their planned trip to Los Angeles.

   E. Search and Seizure Warrant

50. On August 10, 2020, based on an affidavit from Special Agent Schutz, a magistrate judge in the United States District Court for the Northern District of Illinois issued a Search and Seizure Warrant in Case Number 20 M 419 for the checked black suitcase.

10

51. Upon execution of the warrant, law enforcement officers seized funds totaling $113,957 in United States currency from the checked black suitcase as property subject to forfeiture. The seized funds were found in the following denominations: 398 one hundred-dollar bills, 159 fifty-dollar bills, 3,164 twenty-dollar bills, 191 ten-dollar bills, 193 five dollar bills, and 52 one dollar bills.

F. Seizure of the subject Property for Forfeiture

52. DHS, Fines, Penalties, and Forfeitures Unit initiated administrative proceedings against the subject property by mailing a Notice Letter and Notice of Seizure to Davis by certified mail.

53. In response to this notice, Davis filed a claim to the subject property with DHS, Fines, Penalties, and Forfeitures Unit on September 30, 2020.

54. Also on September 30, 2020, Daniels filed a claim to the subject property with DHS, Fines, Penalties, and Forfeitures Unit.

55. On November 24, 2020, DHS referred this matter to the United States Attorney's Office in Chicago to initiate judicial forfeiture proceedings.

G. Investigation of Deb's Closet and Englewood Furniture

60. Special Agent Schutz utilized law enforcement databases, public records, open source queries, interviews, and surveillance to investigate the businesses "Deb's Closet" and "Englewood Furniture."

61. As a result of the investigation, law enforcement determined that "Deb's Closet" was located at 1253 W. 63rd Street, Chicago, Illinois 60636.

62. Investigators identified wwww.debscloset.com as a website for "Deb's Closet." The website provided the business address, hours, contact information and online shopping options. The contact email was listed as john.doe@example.com. The hours of operation were listed as Monday - Saturday, 11:00am - 07:00pm. Other menu options such as track orders, shopping bag, and shop now did not function. No merchandise was posted for sale on the website.

63. Investigator identified a Facebook page for "Deb's Closet." The page had approximately 20 posts from May 22, 2020 to August 20, 2020 and included contact information and the website www.debscloset.com. It appeared that merchandise could be purchased only through a link that directed the user to the website, debscloset.com. No reviews of "Deb's Closet" were posted. "Deb's Closet" Facebook profile had approximately 266 total "follows" and 265 total "likes" as of November 9, 2020.

64. On November 5, 2020, at approximately 1130 hours, Special Agent Schutz conducted surveillance of "Deb's Closet" located at 1253 W. 63rd Street, Chicago, Illinois 60636. The surveillance was during the business hours listed for the store on its website. At the business address, the metal shutters were pulled down over the windows and door.

65. Directly next to "Deb's Closet" was a store named "Deb's Furniture." The two businesses appeared to be a part of the same building. "Deb's Furniture" also had the metal shutters pulled down over the windows. No movement was observed at "Deb's Furniture" at any time during the surveillance.

66. On November 5, 2020, at approximately 1300 hours, surveillance of "Deb's Closet" ended. No individuals were observed entering or exiting the business, and no vehicles were observed arriving at the business, during surveillance. One car with Indiana License Plate, believed to be unrelated, was already parked nearby prior to surveillance. The metal shutters remained down for the entirety of the surveillance.

67. The 7th District Chicago Police Department is located at 1438 W. 63rd Street, Chicago, Illinois, approximately one and a half blocks away from the "Deb's Closet" location on 63rd Street in Chicago, Illinois.

68. In November 2020, Officers with the Chicago Police Department and members of the Community Policing Group provided the following information to investigators:

>a) CPD officers visited the grand opening of "Deb's Closet" a few months prior.
>
>b) CPD officers observed that "Deb's Closet" was a small clothing shop.
>
>c) CPD officers noted approximately 3 customers inside "Deb's Closet" at the time of their [yes, at least two officers were present] interaction.
>
>d) CPD officers did not see the business open after approximately one week after the grand opening.

13

69. A business query of "Deb's Closet" on the Department of Business Affairs and Consumer Protection by investigators revealed that 1253 W. 63rd Street, the location of "Deb's Closet," and the name "Deb's Closet," did not have a business license

70. A business query of "Englewood Furniture" on the Department of Business Affairs and Consumer Protection by investigators yielded no results.

## Conclusion

71. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

72. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id*.

Prayer for Relief

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1) That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2) That due notice be given to all parties to appear and show cause why forfeiture of the subject property to the United States in accordance with the claims herein set forth should not be decreed;

3) That this Court enter a judgment of forfeiture for the subject property to the United States; and

4) That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

        Respectfully submitted,

        JOHN R. LAUSCH, Jr.
        United States Attorney

By:  */s/ Alexandra Morgan*
     ALEXANDRA MORGAN
     Assistant United States Attorney
     219 South Dearborn Street, Rm. 500
     Chicago, Illinois 60604
     (312) 353-1123

| | |
|---|---|
| NORTHERN DISTRIT OF ILLINOIS | ) |
| | ) |
| | ) SS |
| COUNTY OF COOK | ) |

## VERIFICATION

I, Daniel Schutz, having first been duly sworn, upon oath, depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, and have been so employed since April 2019.

2. My duties and responsibilities as a Homeland Security Investigations Special Agent involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

3. I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

4. This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 29th of December, 2020, in Chicago, Illinois.

*Daniel Schutz*
DANIEL SCHUTZ
Special Agent
Department of Homeland Security,
Immigration and Customs
Enforcement, Homeland Security
Investigations